### YOHN v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 6, 1922.)

No. 194.

1. **Commerce ⟨⟩33—Goods moving between points in same state through another state constitute "interstate shipment," within larceny statute.**

A shipment originating in one state and consigned to a point in the same state, but moving in its course through another state, constitutes an "interstate shipment," within the meaning of Act Feb. 13, 1913, § 1 (Comp. St. § 8603), providing for punishment of larceny of goods in interstate commerce.

2. **Commerce ⟨⟩16—"Intrastate commerce" defined.**

"Intrastate commerce" is that commerce which is, during its whole course of transportation, within the jurisdiction of a single state.

[Ed. Note.—For other definitions, see Words and Phrases, Intrastate Commerce.]

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against William Yohn. Judgment of conviction, and defendant brings error. Affirmed.

See, also, 275 Fed. 232.

Stanton & McDonald, of New York City (John T. Clancy, of New York City, of counsel), for plaintiff in error.

William Hayward, U. S. Atty., of New York City (Garrett W. Cotter, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. The defendant below has been convicted under an indictment which charged him and two others with the larceny from a railroad car belonging to the New York Central Railroad Company of five cases of cheese, which were moving in interstate commerce over the line of the West Shore Railroad from Massena Springs, in the state of New York, through the state of New Jersey, to New York City. His codefendants were acquitted.

The indictment was filed on April 20, 1921. The trial began on May 6th. For reasons which do not appear the trial was adjourned on May 10th to May 16th, and a verdict of guilty was returned on May 18th. On May 23d the defendant was sentenced to three years' imprisonment in the United States penitentiary at Atlanta, Ga. A writ of error was sued out on August 5th, and the defendant was released on bail in the sum of $5,000 pending the final determination of the case in this court.

[1] At the trial his counsel moved to quash the indictment on the ground that it showed upon its face a state and not an interstate shipment. The motion was denied. After verdict his counsel moved in arrest of judgment, on the ground that the court had no jurisdiction, as the indictment disclosed on its face no offense against the United States, as it showed an intrastate and not an interstate shipment. The motion was denied. The indictment is founded upon the Act of February 13, 1913, which reads in part as follows:

"Whoever shall unlawfully break the seal of any railroad car containing interstate or foreign shipments of freight or express, or shall enter any such car with intent, in either case, to commit larceny therein; or whoever shall steal or unlawfully take, carry away, or conceal, or by fraud or deception obtain from any railroad car, station house, platform, depot, steamboat, vessel, or wharf, with intent to convert to his own use any goods or chattels moving as, or which are a part of or which constitute, an interstate or foreign shipment of freight or express, or shall buy, or receive, or have in his possession any such goods or chattels, knowing the same to have been stolen, * * * shall in each case be fined not more than $5,000 or imprisoned not more than 10 years, or both." 37 Stat. 670 (Comp. St. § 8603).

The sole question which can be considered is whether a shipment originating in one state and consigned to a point in the same state, but moving in its course through another state is interstate commerce within the meaning of the statute.

[2] It is contended on defendant's behalf that the shipment was not of an interstate character, because the point of origin and the point of destination were in the same state. The contention is untenable. Intrastate commerce is that commerce which is during its whole course of transportation within the jurisdiction of a single state. Commerce which originates in a state, passes into another, and then returns to the first, is interstate, as it has gone beyond the state in which it originated, and then passed back again into it, and so has become subject to different jurisdictions in the course of its transportation. Neither state is able to protect it during the whole period of its transportation, and this fact makes federal control practically necessary, as well as legally possible.

The identical question was presented to the Court of Appeals for the Third Circuit in United States v. Moynihan, 258 Fed. 529, 169 C.

C. A. 469. In that case the shipment originated in New York City, and was to be transported to Buffalo, N. Y. It was routed through the states of New Jersey and Pennsylvania. The court held the shipment interstate. After setting forth the facts relating to the origin and destination of the shipment, and its passing from the state of origin through other states to its destination within the state of origin, the court said:

"It follows that the bale of silk was actually moving as an interstate shipment, and was the class of commerce Congress had power to protect from depredation in transit."

The defendant relies upon Lehigh Valley Railroad Co. v. Pennsylvania, 145 U. S. 192, 12 Sup. Ct. 806, 36 L. Ed. 672. The decision in that case was that for purposes of taxation such a shipment as the one here involved might be regarded as within the state's control. But, as the court pointed out in Hanley v. Kansas City Southern Railway Co., 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333, what was said in the Lehigh Valley Case was carefully confined to purposes of taxation.

Judgment affirmed.