## UNITED STATES v. WINKLER et al.

(District Court, W. D. Texas, El Paso Division. · May 19, 1924.)

No. 4694.

Commerce ⟲⇒33—Receiving stolen goods ⟲⇒1—Transportation of stolen automobile between points in same state through another state is "interstate commerce."

Transportation of an automobile, knowing the same to have been stolen, from a point in one state to a point in the same state, but moving in its course through another state, is a transportation in "interstate commerce," and constitutes an offense, under National Motor Vehicle Theft Act Oct. 29, 1919, § 3 (Comp. St. Ann. Supp. 1923, § 10418d).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

Criminal prosecution by the United States against Frank A. Winkler and Tom Maddox. On motion by defendants for new trial. Denied.

H. R. Gamble, Sp. Asst. U. S. Atty., of El Paso, Tex.

A. M. Mood, of Amarillo, Tex., and Turney, Burges, Culwell, Holliday & Pollard, of El Paso, Tex., for defendants.

SMITH, District Judge. The defendants were tried and convicted upon a charge of having violated the National Motor Vehicle Theft Act (U. S. Comp. St. Ann. Supp. 1923, §§ 10418b–10418f). The indictment alleged that they transported an automobile from Roswell, N. M., to El Paso, Tex., knowing same to have been stolen. The proof showed that the automobile was stolen in Amarillo, Tex., and transported by defendants by continuous journey from Amarillo, Tex., through the state of New Mexico, via Roswell, to El Paso, Tex. The defendants now present a motion for new trial, and urge as a ground therefor that the evidence did not support the allegation that the automobile was transported in interstate commerce from Roswell, N. M., to El Paso, Tex., but showed that the transportation was from Amarillo, Tex., to El Paso, Tex.—from and to points within the same state—and that therefore the case does not come within the purview of the National Motor Vehicle Theft Act.

It is my opinion that the motion should be denied. The above-named act provides that:

"Whoever shall transport * * * in interstate * * * commerce a motor vehicle knowing the same to have been stolen shall be punished," etc.

. And it declares that the term "interstate commerce," as used in the act, "shall include transportation from one state * * * to another state" a usual definition of interstate commerce given by legislative acts and judicial decisions.

It will be noted that the offense consists in transporting a stolen car *in interstate commerce,* not in the completed journey from one state to another state. It would seem that it was the evident purpose of Congress to protect interstate commerce from the entry therein of

⟲⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

stolen motor cars; that, if the intended journey would, if completed, constitute an interstate transportation, the offense would be complete when the stolen vehicle is started on the trip.

I find myself wholly unable to agree with counsel for the motion in their contention that, inasmuch as the transportation of the automobile was by continuous journey from a point in Texas to another point in Texas, such transportation did not come within the purview of the statute; that the fact that the journey was partly through the state of New Mexico did not bring it within the statute. This contention is completely met by the following authorities: Hanley v. Kansas City Ry. Co., 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333; United States v. Erie Railroad (D. C.) 166 Fed. 352; Western Union Tel. Co. v. Speight, 254 U. S. 17, 41 Sup. Ct. 11, 65 L. Ed. 104; United States v. Yohn (D. C.) 275 Fed. 232; Yohn v. United States (C. C. A.) 280 Fed. 511 (same as next preceding); United States v. Moynihan, 258 Fed. 529, 169 C. C. A. 469; United States v. Delaware L. & W. R. Co. (C. C.) 152 Fed. 269. These decisions all hold that a continuous transportation from a point in one state to a point in the same state, partly by way of another state, is interstate commerce.

In the Yohn Case, supra, the sole question was whether a shipment originating in one state, and consigned to a point in the same state, but moving in its course through another state, is interstate commerce, and upon this question the court said:

"It is contended on defendant's behalf that the shipment was not of an interstate character, because the point of origin and the point of destination were in the same state. The contention is untenable. Intrastate commerce is that commerce which is, during its whole course of transportation, within the jurisdiction of a single state. Commerce which originates in a state, passes into another, and then returns to the first, is interstate, as it has gone beyond the state in which it originated, and then passed back again into it, and so has become subject to different jurisdictions in the course of its transportation. Neither state is able to protect it during the whole period of its transportation, and this fact makes federal control practically necessary, as well as legally possible."

The case of United States v. Delaware, L. & W. R. Co., supra, I think is exactly in point. The indictment in that case charged the defendant railway company with the offense of paying rebates in violation of the Interstate Commerce Act (Comp. St. § 8563 et seq.) and the acts amending it, particularly the act of 1903, commonly called the Elkins Act (Comp. St. §§ 8597–8599). The rebates alleged to have been illegally paid were on shipments from New York to Buffalo, in the same state, but the shipments were through New Jersey and Pennsylvania in going from point of origin to destination. The contention was made that such transportation was not interstate commerce, and that Congress could not constitutionally pass an act imposing a criminal punishment for giving rebates upon such a shipment. It was also claimed that, even if such transportation was interstate commerce, the Interstate Commerce Act did not in fact apply to such a case. The Elkins Act made it an offense for any carrier subject to the Interstate Commerce Act to pay rebates. The carriers to which the Interstate Commerce Act applied, as defined in the first section of that act, were

carriers engaged in the transportation of passengers and property "from one state * * * to any other state." The court held the paying of rebates upon this shipment was a violation of the Elkins Act; in other words, that a shipment from New York to Buffalo, through New Jersey and Pennsylvania, was a transportation from one state to another state.

I can see no difference in principle between the case just cited and the case under consideration. If transportation from New York to Buffalo, through New Jersey and Pennsylvania, was a transportation "from one state to another state," so would be a transportation from Amarillo to El Paso through New Mexico. In support of their position counsel for defendants have cited the following authorities: United States v. Wilson (D. C.) 266 Fed. 712; United States v. Gudger, 249 U. S. 373, 39 Sup. Ct. 323, 63 L. Ed. 653; Preyer v. United States, 260 Fed. 157, 171 C. C. A. 193; Preyer v. United States (C. C. A.) 269 Fed. 381; Whiting v. United States, 49 App. D. C. 225, 263 Fed. 477. All of these cases, except the first cited, arose under what is commonly called the Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), which prohibits the transporting of liquor in interstate commerce "into" any state or territory, the laws of which state or territory prohibit the manufacture or sale of liquor therein. They were all cases involving interstate transportation, but the holding in each was merely that the word "into," as used in the statute, refers to the state of destination, and not to the means by which that end is reached. The movement through a state as a mere incident of transportation to the state into which it is shipped is held not to be within the act. And I do not think the decisions in these cases have any application to the question under consideration.

However, the case first cited by defendants' counsel, United States v. Wilson, seems to sustain their position. But it seems to stand alone, without authority to sustain it, and out of harmony with all other cases upon the same subject. And while I have the highest respect for the learning and judicial ability of the eminent judge who rendered the decision in that case, I find myself unable to accept it as a proper construction of the statute in this case.

The motion for new trial is denied.